Good morning, Your Honor. May it please the Court, Brian Johnson on behalf of Mr. Ferguson, if I could, I'd like to reserve five minutes for rebuttal. The question presented today on plaintiff's appeal is whether or not a credit services organization like GreenSky can bind a consumer to an agreement without following the specific contract formation requirements of the California Credit Services Act. Under California law, the answer is clearly no. The fact that the agreement at issue here is an arbitration provision and that provision sits within a broader loan agreement to which the defendant is not actually a party does not change the fact that it is California law that governs here. We know that arbitration clauses do not get special treatment. That's what the Supreme Court said in Morgan v. Sundance. They're treated just like any other contract under state law. And under the law of California, a credit services organization wants to bind a consumer to an agreement, it must do two things. First, it must obtain unambiguous express consent in the form of a written signature. It also has to be in writing. Second, it must disclose very specific information about what it's doing, how much it's being paid, and that the consumer can cancel the contract. It's not disputed that challenges actually went to the validity of the contract as a whole. But that finding was contrary to Supreme Court precedent, California contract law, and the facts of this case. The standard of review here is de novo, that's not really disputed. We're asking that this court reverse the district court for three reasons. First, plaintiffs raised a valid formation challenge under state law at the arbitration agreement. Formation is not a delegable issue. For that reason, the district court needed to decide it. Even if it had gone to validity, plaintiffs specifically directed an applicable challenge at the delegation clause. The district court needed to address whether or not that delegation clause was valid. Finally, the district court was not barred from hearing the challenge regardless of its nature, based on its relationship to the merits, because the court didn't need to reach the merits. Could you explain in your view, what is the distinction between a challenge to validity? How do we tell what one is? Yeah, so thank you, Your Honor. That's a great question. So the nature of the challenge is what matters under state law. Does the question go to formation? Does it look like formation? Is it some procedural prerequisite to a contract being concluded? Or is it a validity challenge, which typically goes to some substantive prohibition in the statute? That's what you see in Buckeye, right? So in Buckeye, that case dealt with a specific provision of the statute, or I'm sorry, a specific provision of the contract for usurious interest. Usurious interest was illegal under Florida law. And also under Florida law, that provision rendered the entire contract invalid. Here, we're talking about a signature requirement that goes to consent. And so that's more of a procedural prerequisite to the execution of a contract. It doesn't matter whether or not the challenge arises from statute or whether it arises from common law. And in this particular case, we have a California Court of Appeals case, Mitchell, that specifically identifies these CSA contract formation requirements, or excuse me, that specifically identifies the CSA's requirements as going to contract formation. What about, I mean, you said procedural. So what about, I mean, the doctrine of procedural unconscionability, right? So if a state has a rule that says a contract of adhesion, for example, is suspect, would you say that's a formation challenge because it's about the way the contract was negotiated? No, I think in that case, procedural unconscionability does go to validity. I should have said process. It's more about the process, right? It's not about whether or not a specific provision of the contract is illegal. It's about the process that the legislature lays out that says, okay, this is what an entity needs to do to conclude a contract with a consumer. So we know that... With regard to Mitchell, there's not a lot of reasoning as to why those issues are formation issues. What confidence should we have that the California Supreme Court would follow Mitchell? So the California Supreme Court actually denied cert of the Mitchell opinion. And I think you have to look at what the legislature was trying to accomplish there. Legislature identified the credit services industry as an industry ripe with abuse. Consumers were being misled. So what they said was, we're not going to allow that anymore. If you're a credit services organization in a contract with a consumer, you have to do several things. You have to provide specific information about what you're doing, how much you're being paid, and that the consumer can cancel the contract. You have to do it in writing. And you have to get express unambiguous consent in the form of a signature. Implied consent via subsequent action is not sufficient. What the California legislature was doing here was simply cabining the type of consent that a credit services organization can use to bind a consumer to a contract. I think a signature is perhaps the most common way of showing consent to contract formation under the law. It should not matter whether or not that challenge is coming from statute or whether that challenge is coming from the common law. And here we have a specific case directly on point. And the Supreme Court opinion in first options does tell us that it is state contract formation law that governs when a district court is deciding whether or not an arbitration agreement has ever been formed. Counsel, can you explain the relationship between the general common law issue and the credit services agreement? I must say I'm not clear from reading the briefs on this. You stipulated, your client stipulated that they're not challenging formation under general common law. Is that yes and no? So after we lost at the original motion to compel phase, the court ordered a trial and we simply did not, we simply stipulated to the notice and subsequent consent for the purposes of that trial. So that's a different, that sort of common law consent via subsequent action, that is not sufficient under the credit services act for a credit services organization to form a contract with a consumer. So your position is that that stipulation does not concede the issue of arbitrability generally. Is that right? Yes, that is correct, your honor. In your brief, it seems like you were trying to undermine that stipulation by kind of re-litigating some of those issues. Why should you be allowed to do that? You stipulated. I think in that part of our brief, was that responding to, I believe that was responding to Green Sky's appeal. I don't believe we were trying to litigate, re-litigate the notice, the sort of subsequent consent requirements for purposes of the, I mean, we are litigating that for purposes of the appeal and trying to explain why Judge Corley's initial opinion should not be reversed for clear error. Our, on our appeal, our basis for, is that the credit services organization have a very specific consent requirement that they have to follow and that is a signature requirement under California law. The district court here held that the specific formation requirements under the credit services act went to the validity of the contract as a whole and held that that issue was delegated to an arbitrator. Even if the, even if the argument did go to validity, the district court was still required to determine whether or not the delegation clause itself was valid because plaintiffs specifically directed an applicable challenge to the delegation clause. Because delegation clauses are essentially antecedent many arbitration agreements, they can be challenged based on the same sort of contract challenges that any contract are subject to, so long as they're specifically directed and applicable to it. That's what the Supreme Court essentially held in Renner Center and what this court held in Lim. In that case, the plaintiff raised a claim of unconscionability against both the arbitration provision and the delegation clause based on the same fee shifting and forum provisions in the arbitration agreement. The Ninth Circuit upheld the lower court's finding that both the arbitration provision and the delegation clause were unconscionable for the same reason, the fee shifting and the venue provisions. In this circuit, a challenge to the delegation clause does not have to be unique or exclusive to the delegation clause, it simply must apply to it. And we know per Mitchell that under California law, the signature and notice requirements of the CSA apply to arbitration agreements. I should point out, we are not challenging the whole contract here, but the holding in Buckeye with respect to that point is not implicated here. The only parties to the broader loan agreement, so the whole contract, was the bank and the consumer. Green Sky was not a party to the broader loan agreement, it was only a party, the district court held that it was only a party to the arbitration provision had a broader definition of who is a party to it. Can I ask you, if the district court didn't address whether Green Sky is a credit services organization and whether the CSA formation requirements were met, why should we do that in the first instance? I think certainly if this court were to find that Judge Corley should have held, that should have heard this challenge, this court is permitted to do so because the facts are not really in dispute. We raised our challenge based on Green Sky's answer and the judicial admissions that are in there. Courts routinely consider those when they are analyzing a motion to compel. And I would also say, I do want to talk about that. So Green Sky raised the argument in their papers that the district court was prohibited from hearing our challenge because it went to the merits. I want to point out that that argument does not apply in the context of formation, it has only ever been applied in the context of arbitrability. The Supreme Court in Granite Rock essentially says that, right? Because it reversed this court's finding that the issue of ratification was delegable to an arbitrator. In that case, there was no dispute over whether or not a contract go into effect. And that issue, that date of ratification in that case was decisive of the merits. And the Supreme Court overruled this court's opinion there and said, no, you have got, the district court has to decide whether or not there is a valid enforceable arbitration agreement before you can send any disputes to the arbitrator. To conclude, your honors, plaintiff's appropriate, excuse me, to conclude on plaintiff's appeal, plaintiffs appropriately challenged the formation of the arbitration agreement with Green Sky. The requirement here is a signature requirement. California law tells us that that is a formation requirement. The district court needed to decide it. Even if it did go to validity, plaintiffs appropriately directed an applicable challenge at the delegation clause and the needed to decide whether or not that delegation clause was valid before it could refer the issue to the arbitrator. Finally, the court was not prohibited from hearing the challenge because it did not need to reach the merits. And I just, one last point, I think if this court were to uphold the district court and find that a signature requirement under statute is not, does not go to formation, it would essentially mean that the California state legislature could only enact validity requirements. And no circuit court has ever said that. Certainly state courts of appeals have said the opposite of that. For these reasons, your honors, we would ask on plaintiff's appeal that this court reverse the district court's order on the motion to compel and instruct the court to deny Green Sky's motion to compel based on the CSA challenges that we raised here. Briefly on Green Sky's cross appeal. Green Sky's cross appeal is really just a collateral attack on plaintiff's appeal. Green Sky hasn't really suffered any harm here because Mr. Ferguson has been compelled to arbitration. To the extent there was any harm, it was of Green Sky's own making. It voluntarily dismissed its appeal saying it wanted to go through with the district court's plan to rehear the motion. So this court dismissed that appeal without prejudice to subsequently filed orders. But more importantly, the district court did not commit clear error here. That's a high bar. The findings must be illogical, implausible, and without support in the record. Here, Green Sky simply did not present sufficient evidence to show that Mr. Ferguson ever used the shopping pass to bind him to the arbitration agreement with Green Sky or took any other action beyond silence to consent to the contract. Under California law, that silence was not sufficient to bind him. To any agreement. Thank you, your honors. I'd like to reserve the rest of my time, please. You may. Mr. Goheen. Good morning, your honors. May it please the court, Barry Goheen representing the Green Sky appellees and cross appellants. I'd like to reserve four minutes for rebuttal on the cross appeal. Can I ask you, why have you cross appealed? Because as we, your honor, as we pointed out, there were errors in the Judge Corley's April 2021 order that could have, and we believe will have, collateral estoppel effect in other class member, putative class members in this case, as well as potential others. This is the fourth case or the fourth lawsuit. There are many plaintiffs going on around the country. Proposed class actions challenging the same agreement. They've all been rejected by the courts, but there's no, there seems to be a very high level of confidence that there's something wrong with the agreement. Being able to rely on Judge Corley's erroneous findings with regard to the applicable. Right, but our job is to review judgments, not things that district courts say along the way to getting to a judgment. And the judgment that you got is a judgment dismissing his claim and saying that he has to arbitrate. And you are perfectly happy with that, right? You're not trying to change that, are you? We're not trying to change, your honor, the fact that he must arbitrate, but obviously the April 9th 2021 order merged into the final judgment. There's no question about that. It was an interlocutory order. It merged as any other interlocutory order would into the final judgment. This court has, it's been very clear from cases that we've cited this court, the Glenn Miller Productions case, Schwartzmetter, as well as, of course, the Roper case from the United States Supreme Court and the Comrata case from 2011 from the Supreme Court. That just because a prevailing party is seeking to appeal doesn't, doesn't mean there's no jurisdiction. As long as there's article three standing, there's, there's the opportunity to appeal. But you're not, you are not seeking, other than your disagreement with some of the earlier things that the district court said in terms of the relief that the district court ordered in its judgment. You're not seeking to change that in any way, are you? We're not seeking to change that, your honor, any more than the appellate, than the appellees in Glenn Miller or the Leonard case in the Fifth Circuit. We're very, uh, disadvantageous to those prevailing parties' orders or rulings that led up to those cases. This is the same, this, to be, uh, right, respectfully, uh, honest, is the exact same situation. Right, but I, I guess, I mean, maybe you want us to say that the district court's, some of the district court's reasoning was wrong and, um, that we don't agree with it, and it should have said some other things. But at the end of the day, what, what you want is something from us that says affirmed, right? There was no reasoning by the district court, your honor. They stipulated to all of the facts. I think this came up in Mr. Johnson's argument. They're basically saying, oh, the two years of resistance to arbitration, forget it. We don't want a formation trial. We'll just dissent to everything. I mean, if that's the case, then, I mean, the court just stamped a stipulation that they sent. So I guess I'm not understanding that there was no reasoning from the district court other than, well, we've changed our mind. We don't want a formation trial. Well, we believe we were injured leading up to that, and we think we have Article III standing on that basis. There's nothing to prevent some, another plaintiff in this case who believes they're in the class or some other plaintiff to say, hey, look at what this judge held. Uh, Norcia, you know, doesn't, doesn't apply here because of thus and so. So it doesn't matter that eventually there was, that they went to, that they were, they caved on because they didn't want a formation trial. Look, we're going to rely on this order. We believe we've been agreed because of that, and that's, of course, the article. What you want is what I believe the Seventh Circuit referred to as a writ of erasure to sort of, you know, cleanse the proceedings below from the earlier statements by the district court so that nobody else can rely on them, right? I don't, you know, I wouldn't call it a writ of erasure. I mean, it is what it is, or it was held as it was held, but what we want is, I guess, a ruling that Norcia, for example, doesn't apply here, or a loan approval, which the district court clearly erred on, does not constitute a loan any more than walking into a bank, applying for a mortgage, ultimately at that moment means, okay, now you have your mortgage without going through the district court held here, and that is damaging going forward, just like in the Leonard case and the Chorley case in the Fourth Circuit where there were disadvantageous rulings, albeit granting summary judges to the defendants that invalidated part of the insurance policies in those cases. Those were injurious rulings that enabled those prevailing parties, quote, unquote, to appeal. I respectfully don't see the difference here. It's not a writ of erasure. It's correcting incorrect rulings by a district court. That's what we believe this court and any appellate court is designed to do. There has been an agreement, and we ask that it be corrected. So, turning to Mr. Ferguson's appeal, let's correct a lot of what we believe are blatant misstatements. First of all, this doesn't involve credit service organizations. Greensky is not a credit services organization. No state or federal court has ever held that it's a credit services organization. It denies, in this case, that it's a credit services organization. But not in your answer. In your answer, you conceded a bunch of paragraphs in the complaint, 33, 36, 38, 39. I'm looking at ER 182, paragraphs 33, 36, 38, 39. Greensky admits the allegations in paragraph 33, 36, 38, 39. We deny that we are a credit services organization. That is a defense in the case, and that it is now at issue under Rule 8. Okay, can you take me, so I'm looking at 1789.12d, which is the statutory definition, and it defines it as a person who, with respect to extension of credit by others, sells, provides, performs any of the following services in return for the payment of money. And one of them is obtaining a loan for a buyer. One of them is providing assistance or advice to a buyer with regard to that. What among those things do you do not do that takes you out of that definition? This is exactly the merits issue that the in the parallel case before Judge Bloom in Florida. We filed a motion for summary judgment on that, response to which plaintiffs, represented by Mr. Johnson, decided to settle the case. We don't do any of those things. We don't provide credit. We don't improve credit. We don't broker loans. We don't do any of that. We're not a credit services organization. Right, but I'm just like, maybe I'm not understanding the statutory definition, but it doesn't seem to require that you provide credit. It requires that with respect to the extension of credit by others, you provide the service of helping, providing advice or assistance with regard to obtaining a loan. And I understood in the admissions that Judge Ko just referenced that you admitted that you submit the consumer's loan applications go to you and you pass them along to the banks for underwriting and approval. Am I wrong about that? We pass them on, but we're not assisting. Assistance would be providing advice to the lender. The contract, I think Mr. Johnson went to great lengths to point this out, the loan agreements between the borrower and the organization. I mean, that's what Green Sky's business is. And again, this goes exactly to the merits of the case. Caremark totally addressed this issue just last year. Well, it goes to the merits, but it may be, but it also goes to whether you actually formed a contract, right? Because if you, I mean, the argument from the plaintiff is that if you are a credit services organization, then you can't form a contract without getting a physical signature and providing the disclosures. And I know there's a dispute about the signature, but I don't think there's really a dispute that you didn't provide the various disclosures, right? I don't know. That's not even been, that's not even alleged in the complaint that the disclosures, that's what we tried to say. They did not allege any of this in the complaint. This came up two years into the case, half, we think untimely by the way, on rehearing after multiple dozens and dozens of pages of briefing where this never ever came up. So that's not even alleged in the complaint that there are specific contracting requirements. Can we go back to Caremark since you raised it? Caremark says formation has to be decided by the courts. And under Mitchell, these CSA signature and disclosure requirements are formation requirements. So first of all, Mitchell is not binding and we think Mitchell has nothing to do with this case. That was a presumption. Let's talk about that. I didn't like in your brief, you kind of cropped the quote of Muniz, which I think is not ideal. In my personal perspective, you just cite in district appellate courts are persuasive, but do not bind each other or us citing Muniz. But then you conveniently left out the next sentence, which says that we nevertheless have to, we should nevertheless follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it. So why shouldn't we follow Mitchell? Because the preemption decision that assumes that Greensky is a credit services organization. That was not a fact at issue in Mitchell. It is a fact very much at issue here. So not only, so we deny that we're a CSO, we deny that we are somehow wedded to heightened formation requirements. If that's what they're called, that's just made up. But you're saying heightened formation requirements are compliance with the credit services act. That's what they say. There's no, there's no such term as heightened formation requirements. They just, they made that up out of thin air in, in the, at the 11th hour with judge Corley. There's nothing in the statute or in Mitchell for that matter, that uses the phrase heightened formation requirements or anything else. They're just making this up. Okay. But if, if we were to disagree with you, that Greensky is a credit services organization, then the CSA would apply and Mitchell would apply, correct? If the court is going to resolve the merits where judge Corley did not, we would certainly obviously say that's outside the law. I mean, that's for sure, because judge Corley had the opportunity to make this ruling. They did not put any of these issues before judge Corley, your honor. That's where this needs to go. If the court's at all inclined to look, give any credence to this, they talk, for example, the limb case, they didn't cite limb one time before judge Corley, not once they talk about unconscionability. That's not even, that was never even raised before judge Corley, not one time, but Mitchell was before judge Corley, right? It was one time in two pages before judge Corley in two years. You're right. I agree with you. That's correct. At the 11th hour, 18 or 20 months into the case, after not putting it before the court for 18 months. I mean, you've brought up the delay a number of times now, and it seems like that might well have been a reason for the district court to say, you're too late, I'm not going to consider this new argument. But the district court didn't say that. It considered the argument on the merits. So are you suggesting there was an abuse of discretion by the district court? I mean, what are we to do with the fact that this was a late argument? We did put it, your honor, in our brief. What judge Corley held was after this court's Hanson decision that this was, that it needed, and this is the term she used, rehearing. Well, rehearing, in my experience, is you take the same arguments that you've made. You can't just start injecting new arguments at that point in time, and suddenly, after having gone down the road for 18 or 20 months on the same types of arguments, say, oh, here's our co-counsel, which is the case here, on record. Oh, remember this case, Mitchell? I had that 20 years ago. You may want to put that in there and talk to judge Corley about it. That's what happened here. So one of their counsel of record was on Mitchell, and they just decided, well, let's try this. Nothing else has worked. And you think in those circumstances, the district court looks at that and says, well, gosh, this seems like a good argument, but I'm just not allowed, the court is just not allowed to consider the argument? Regarding the hearing, your honor, that's true. I mean, if it were like a brand new day, let's move, let's remove, and everybody can submit new evidence, submit whatever you want. And I think that's a different story. That's not what judge Corley ruled for the parties, though. Judge Corley said, well, I just need to assess it under Hansen, which just came out. So under the Hansen standard, now submit. Let me ask you, let's put aside the CSO issue. Let's just look at the Green Sky Agreement, which is ER 281 through 291. Where does it have the disclosure that, quote, working day after you sign it, see the attached notice of cancellation form for an explanation of this right? And I'm citing to Civil Code 1789.16 contract requirements. Do you concede that that language is not in this agreement? The TILA disclosures are in the agreement because it's subject to TILA. Green Sky is not a credit services organization. I understand. I understand. I'm not even talking. I said, let's set the CSO issue aside. Do you concede that the language I just quoted from 1789.16 is not in the Green Sky Agreement? I have not seen it in there because Green Sky has never been held to be a CSO by any court, state, or federal, including Judge Corley. Yes, I think that's correct. And that's why it's a merits issue that Judge Corley, if the best case scenario to me for plaintiffs is to remand it, for this court to reach out and say, well, the CSO, the CSA applies because we're a CSO and no court has ever held that, just seems to be beyond what this court should do, especially... Can I ask you one more question? I apologize for interrupting you. Same statute. Do you agree that that agreement, ER 281 through 291, does not include the credit services organization's principal business address and the name and address of its agent other than the Secretary of State and the State of California authorized to receive service of process? I'm not sure I understand the question, Your Honor. Well, who is the credit services organization here with regard to Mr. Ferguson? There is no credit services organization. Nobody? There just isn't one. There isn't one. I mean, this is an argument they could have made in four other cases. It's just not a credit service. Okay, but you would agree that there is no credit services organization's principal business address and name and address of its agent in this document, ER 281 through 291, correct? Of course I would, because Green Sky is not a credit services organization. That, to me, respectfully, that's like saying there are certain requirements for governmental entities or major league baseball teams or labor organizations. None of that language would be in there either, because Green Sky is not one of those. That's a meritorious determination that discovery having been stayed, there simply isn't anything there. If they had the courage of the convictions they now espouse two years later, they would have moved for summary judgment after they got our answer. They didn't, and I think that's very telling. Why didn't they? You said a moment ago the most they would be entitled to is a remand. On the question of whether you're a credit services organization, are there facts that are missing that are relevant to that determination, or is it just a matter of applying the statutory again? This is asking you to accept some premises that I know you don't accept, but assuming that we or the district court or somebody was trying to figure out, are you a credit services organization? What more information would they need to have to be able to answer that question than what is already in the record? I don't know how to answer that, Your Honor. I guess my experience is you deny fact A, then plaintiffs have to prove that fact. We deny we're a CSO. We denied every fact that alleged that we were a CSO, and I guess I don't, I guess I'm struggling with, there would have to be discovery, which has been stayed, of course, as to Ferguson, so I don't understand why there would be any, I mean, I guess I'm just struggling to understand how, when someone denies that they are an entity, how they can then be held to be that entity without the basis of any discovery at all. That's, I've never, I've been practicing for 30 years, I just haven't encountered that. That assumes that whether you are or are not a CSO is a factual question, and that was sort of what my question is getting at it, because it seems to me like a legal conclusion, right? It requires us to figure out what does 1789.12 mean, and then like we look at the facts that are admitted about, you know, how you have the relationship with the banks and the contractors and all those things, and then we say does that meet the statutory definition, right? Isn't that a legal question? Well, it would have to be, well, I think eventually it would have to be a legal determination on, based on facts, though, that are developed, in this case disputed facts that we are or are not. If you look at the very first paragraph of Mitchell, Mitchell says that the court observed, this is Mitchell, credit organizations, quote, offer to obtain credit or improve credit standing of consumers who have experienced credit problems. None of that is even remotely concerned with GreenSky's business, and from that paragraph, Mitchell did whatever it did, but that's a suit because the defendants there were credit repair organizations that were subject to the Credit Services Organization Act. That simply is not GreenSky. I don't know how to say it any more clearly, and we would strongly believe that Judge Corley had the opportunity to make that determination, even though it was raised late in the game, and she properly did not because there's no facts to support that. We deny that. That's a fact, and we denied all the other places in the CSO. All right, well, we've taken you over your time. We'll give you a minute for rebuttal limited to the cross-appeal, and we'll hear from Mr. Johnson. Thank you, Your Honor. Just briefly, I think, Judge Miller, this is a legal question on whether or not GreenSky is a credit services organization. GreenSky admitted that they do the underwriting and approval for the loan. They admit, and that would be for the loan of the consumer, they admit that they have bank partners that fund these loans, so it's a third party funding these loans, and that they get a fee for doing so. I think the definition of what a credit services organization is under the statute is quite broad. Mr. Goheen is correct. It does cover credit repair organizations, but it also covers any person who assists in obtaining a loan from a third party. I mean, it's very broad, and we think based on these judicial admissions, GreenSky has essentially admitted that point, and in our view, has still presented no facts to actually dispute that. I would also just like to point out on their appeal, you know, the merger doctrine here where the order merged in, I don't think that necessarily, if you were to appeal there, would rewind the clock and moot out our after the district court compelled arbitration. It would have been an interlocutory appeal, as she would have stated. Perhaps she would have decided to consider the CS arguments later on a different motion. It's just not clear here, and I would also point out she made the exact same determinations in the order that we appealed to, but GreenSky chose to appeal the previous order. So I just, I should point out, I just don't, I also don't think it was an abuse of discretion for the district court to hear those arguments. I believe she had, based on our response to a motion pleadings that she asked for, I think as an interlocutory order, she was certainly entitled to entertain new arguments if she wanted, and I would just also point out to, I think it was Judge Lynn's point, you know, the issue of the common law contract formation, you know, we're not appealing that issue. Mr. Ferguson is seeking to represent a class here, and we believe GreenSky does not comply with the Credit Services Act, and so it's, the arbitration provisions it would have with other class members would be, would not have been formed either, and so for that reason, we're raising this challenge under the CSA, and unless your honors have any further questions, we would, we would just, it's our position that GreenSky's merit lacks any, excuse me, that GreenSky's appeal lacks any merit, and we would ask that this court reverse the district court on our appeal and instruct that the district court deny the motion to compel based on the CSA-based challenges the plaintiff has raised. I thank your honors for your time. Thank you. Mr. Goheen, cross-appeal, rebuttal? Can I ask one question, Mr. Goheen? Are you making a preemption argument or not? You mentioned it in a footnote, footnote 21 on page 57, and I heard you just mention preemption when you were speaking earlier. Are you making a preemption argument or not? No, ma'am, we're not making a preemption argument. It's just that that's mostly what Mitchell concerned, was the preemption issue. Okay, thank you for clarifying that. Sure, your honor. Judge Corley mentioned that, this is really a preemption case, so to say it suddenly should control assent to arbitrate for someone not, or at least strongly denies their CSO just isn't. We believe that's really reading way, way too much into Mitchell, which this court has never adopted in any form whatsoever, as far as I can tell. Very quickly, on the cross-appeal, they assented to arbitrate. When we have standing to do that, there's not really a, I didn't hear much of a we are aggrieved. There are rulings that don't, that are just not sui generis to this case, and that's the important part. Roper was a class action. There was an 11th Circuit case that's a class action. When you're in class actions, you have the certain possibility where putative class members can be affected by rulings that affect only one person within the putative class. That's what we have here, so we respectfully submit that the cross-appeal, we have standing for it. They have not really defended much on the merits. We ask that the court be reversed on, in April 2021, there was an agreement to arbitrate as a matter of law. Thank you for your time, Your Honors. We appreciate it. Thank you very much. We thank both counsel for their arguments. The case is submitted, and we are adjourned.
judges: MILLER, KOH, Lynn